IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VICTOR R. PEREZ,                                              CV. 06-1805-HU

       Petitioner,

   v.                                        FINDINGS AND RECOMMENDATION

JEAN HILL

       Respondent.


C. RENEE MANES
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR  97204

    Attorney for Petitioner


JOHN KROGER
Attorney General
SUMMER R. GLEASON
Assistant Attorney General
Oregon Department of Justice
1162 Court Street, NE
Salem, OR  97301

    Attorneys for Respondent


1 - FINDINGS AND RECOMMENDATION

Hubel, Magistrate Judge.

Petitioner, an inmate at Snake River Correctional Institution, brings this action pursuant to 28 U.S.C. § 2254.  He challenges the legality of his state court convictions and sentencing.  For the reasons set forth below, the Amended Petition for Writ of Habeas Corpus (#22) should be denied, and this action dismissed with prejudice.

## BACKGROUND[1]

In 1994, the Prasads purchased the Lazy J Motel in Coos Bay, Oregon, from the Patels, assuming the debt owed to the previous owners, the Smiths.  In July, 1998, the Prasads still owned the motel, but they were in financial difficulty and had filed for bankruptcy twice in response to foreclosure actions by the Smiths. On July 16, 1998, after the Prasads' second bankruptcy filing had been dismissed, the Smiths obtained a summary judgment order on their second foreclosure action.  Judgment was entered July 21, 1998.

On July 17, 1998, at approximately 3:30 a.m., there was a small fire in an unoccupied room of the Lazy J, room 3.  The fire was quickly extinguished and damage was minimal.  Upon finding two empty bottles of 151 rum, cigarettes, and matches, fire department personnel concluded the fire was accidental and due to a careless smoker and possibly alcohol.  Three days later, at approximately

---

[1]Information in this section is taken from Petr.'s Brief, #23, and Respt.'s Resp., #33.)

5:30 a.m. on July 20, 1998, there was a second fire in an unoccupied room, this time room 4. A Sheriff's deputy on his way home from work noticed the fire and reported it at 6:18 a.m. Firefighters were dispatched at 6:22 a.m. The fire essentially destroyed the motel.

Mrs. Prasad lived at the Lazy J motel in the manager's apartment, and a teenage son, described as six feet tall, lived upstairs from the apartment. Mrs. Prasad told firefighters the occupants of unit 4 had been unhappy and left earlier that morning after seeking a refund, which she refused. The occupants Mrs. Prasad described were never located. Mrs. Prasad gave conflicting information regarding the whereabouts of her husband, Mr. Prasad.

Interviews of long-time occupants of five units of the Lazy J provided more details regarding events on the morning of the 20th, including: the presence of a two-toned brown pickup truck, that was not the motel owner's truck, parked in front of unit 2, 3, or 4, at approximately 5:00 a.m., but which was gone by 6:10 a.m.; the banging of pipes which woke some occupants at approximately 6:00 a.m.; Mrs. Prasad notifying occupants of the fire between 6:00 and 6:15, but seemingly not concerned about the fire as she had not called the fire department 15 minutes after notifying the occupants of the fire. She reported the fire after being prompted to do so by an occupant.

Investigators on the scene on July 20th noted the following: all clothing was missing from the Prasads' son's closet; the

3 - FINDINGS AND RECOMMENDATION

manager's apartment had an opening to a crawl space for accessing pipes, with a portable dishwasher placed in front of the opening; there was soot in the crawl space and under the dishwasher, suggesting the dishwasher was not in place at the time of the fire; a canine gave signals of detecting accelerant in four locations in unit 4.  Lab tests later confirmed fuel oil had been used as an accelerant in the fire on July 20th.  Investigators concluded the fire was likely arson.  Based on this determination, on further observation of room 3, and on the similarity in the location where the fires started, investigators concluded the fire on July 17th was also intentionally set.  Investigators believed the Prasads were implicated in the fires, at the very least in the fire on July 20th.  The Prasads filed for the full $300,000 value of their insurance policy, but the insurance company hired an investigator and the claim was not paid.

An Arson and Explosives Investigator from the Oregon State Police and the private investigator for the Prasads' insurance company pursued the investigation of the fires.  Over the course of the next 12-18 months, the investigation yielded the names of persons possibly involved in the fires, including the owner of the pickup truck seen at the motel on the morning of the 20th, Konrad Cox.  Mr. Cox was interviewed and reported loaning his pickup truck to Petitioner, sometimes overnight, on approximately five occasions over the summer of 1998.  Mr. Cox denied any knowledge of the fires.  At trial he testified that on one occasion when Petitioner

kept the truck overnight Petitioner returned the truck with a fuel can in the back and he noticed an odor of diesel.  Petitioner and the individuals with him told Mr. Cox not to tell anyone they had borrowed the truck.  When Mr. Cox went to retrieve the fuel can he was told not to touch it and one of the individual with Petitioner removed it and placed it in a shed nearby.

Other friends and acquaintances of Petitioner were also interviewed, including Chris Harlukowicz, Dick Hendricks and Dean Perri.  They were all part of a group that used motels in the area for a night or two of lodging, drug use, and partying, including in the days surrounding the fires at the Lazy J.[2]  Petitioner was reported to have had keys to rooms 3 and 4 at the Lazy J motel, that he let others use, despite not being a registered occupant.

In an amended 19 count indictment dated November 20, 2000, Petitioner was charged with four counts of Arson in the First Degree, Attempted Aggravated Theft, two counts of Solicitation to Commit Arson in the First Degree, four counts of Criminal Conspiracy to Commit Arson in the first Degree, Criminal Conspiracy to Commit Aggravated Theft, three counts of Reckless Endangerment of Another Person and two counts of Solicitation to Commit Arson in the First Degree.  Counts 1-9 pertained to the fire on July 17th, and Counts 10-19 pertained to the fire on July 20th.  Mr. Harlukowicz and Mr. Hendricks were also indicted on charges

---

[2]Motels mentioned at trial included the Pony Village Motor Lodge, Captain John's Motel, and City Center Motel.

relating to both fires at the Lazy J motel, and Mr. Perri was indicted on charges relating to the fire on July 20th.  The Prasads could not be located and were believed to be in Canada.

Mr. Harlukowicz pleaded guilty to Arson in the Second Degree with the promise of no prison time in exchange for his testimony against the others.  Petitioner, Mr. Hendricks and Mr. Perri went to trial and were tried before the same jury, but had separate counsel.  At the close of the prosecutions' case, the trial court denied Petitioner's and Mr. Hendricks' motion for judgment of acquittal, but granted Mr. Perri's who had an alibi for his whereabouts on the evening of the July 20th.

The jury voted to convict Petitioner 10:2 on Counts 2 and 10-19, and voted to convict 11:1 on Counts 1 and 3-7.[3]  Petitioner was sentenced to 205 months imprisonment, which included consecutive and concurrent terms.  Consecutive sentencing was imposed based on the trial court's finding that the July 17 and July 20 fires did not constitute a continuing and uninterrupted course of conduct. (#19, Trial Tr. at 812.)

Petitioner directly appealed his conviction raising as error the trial court's failure to grant his motions for judgment of acquittal, and the court's failure to merge the solicitation to commit arson convictions with the arson convictions.  In an Amended Judgment dated June 12, 2002, the trial court did merge Counts 4,

---

[3]The jury voted in a similar manner to convict Mr. Hendricks.

5, 12, and 13 into Counts 1, 2, 10, and 11, respectively, and the separate sentences imposed were vacated. (Respt.'s Ex. 101.)  On August 28, 2002, the Oregon Court of Appeals affirmed Petitioner's convictions from the bench, the Oregon Supreme Court denied review on October 29, 2002.  *State v. Perez*, 183 Or. App. 535, 53 P.3d 471 (2002), *rev. denied*, 335 Or. 57, 58 P.3d 239 (2002).

Petitioner filed for post-conviction relief ("PCR"), challenging the constitutionality of his sentence and raising 19 claims of ineffective assistance of trial counsel, and 2 claims of ineffective assistance of appellate counsel.  The PCR court denied relief on all claims.  On appeal, Petitioner presented one claim of ineffective assistance of trial counsel alleging counsel was deficient for failing to call Philip Caraway and Dean Perri as witnesses.  (Respt.'s Ex. 123 at 10-13.)  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  *Perez v. Hill*, 205 Or. App. 685, 135 P.3d 860 (2006), *rev. denied*, 341 Or. 216, 140 P.3d 1133 (2006).

In the instant petition, Petitioner raises four grounds for relief comprised of multiple sub-claims which can be summarized as follow:

```
Ground One:    Ineffective Assistance of Trial Counsel
               A)  Prior to trial, counsel
                   1.  failed to investigate other possible
                       suspects;
                   2.  failed to move to suppress
                       statements Petitioner made to
                       police;
                   3.  failed to ensure the preservation of
                       tape recordings redacted at
```

counsel's request and later sought
un-redacted;
4.    failed to move to dismiss the
indictment based on prosecutorial
and police misconduct, including a
delayed and faulty investigation.

B)   During trial, counsel
1.    failed to seek exclusion of witnesses;
2.    failed to object to the introduction
of bottles not taken into evidence
until a year after the crime;
3.    failed to object to testimony of
witnesses not on the prosecutions'
witness list;
4.    failed to adequately challenge the
testimony of the prosecution's
primary witness, Harlukowicz;
5.    failed to adequately challenge the
testimony of witness Cox.
6.    failed to adequately challenge the
testimony of fire investigator Austin;
7.    failed to object to hearsay testimony;
8.    failed to object to the inclusion of
Petitioner's prior criminal history
through hearsay testimony, and reference
to his probation officer.

C)   At the close of the prosecution's case,
counsel failed to adequately argue for a
judgment of acquittal regarding July 20, 1998
fire.

**D)**   During the defense case, counsel
**1.    failed to call P.W. Caraway as a defense
witness**;
2.    failed to call D. Neitch to testify as to
an alibi;
3.    failed to introduce the entirety of the
tape of witness Harlukowicz;

E)   During closing argument, counsel
1.    failed to object to prosecution's closing
statements referring to matters not in
evidence;
2.    failed to present a closing statement
that highlighted the faulty
investigation, the failure to consider
other suspects and inconsistencies in the
testimony of prosecution witnesses.

F)   Counsel failed to object to a trial before J.
Gillespie, who took an improper oath of
office.

       G)   Counsel failed to raise issues of the non-unanimous jury verdict.

       H)   Counsel failed to fully and appropriately object to consecutive sentencing, including the failure to raise *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Ground Two:   Ineffective Assistance of Appellate Counsel when counsel
      A)   failed to raise the destruction of the tape of witness Harlukowicz
      B)   failed to challenge the non-unanimous verdict under *Apprendi*;
      C)   failed to challenge the constitutionality of Petitioner's consecutive sentencing under *Apprendi*;

Ground Three:   Violation of the Sixth Amendment due to
      A)   conviction by a less than unanimous jury, and
      B)   consecutive sentencing by the court.

Ground Four:   Violation of the Fifth Amendment in that
      A)   there was insufficient evidence to convict, and
      B)   Petitioner is actually innocent.

(#22, Pet. at 5-18.)  Respondent asserts the defense of procedural default to all but Ground One (D)(1).  (#33, Respt.'s Resp. at 11-12.)

Respondent contends the ineffective assistance of counsel claims presented in Grounds 1(A)4, 1(B)6-8, 1(D)2-3, 1(E)2, 1(G), and 2(A-C) were never presented to the state PCR proceedings; the trial error claims presented in Grounds 3(A & B) were never presented on direct appeal; the ineffective assistance of trial counsel claims in 1(A)1-3, 1(B)1-5, 1(C), 1(D)2, 1(E)1, 1(F), and 1(H) were presented to the PCR trial court, but were not raised to the state appellate courts; and trial court errors raised in Ground

4(A & B) were presented to the Oregon Supreme Court on state law grounds, but not as federal questions. (*Id.* at 14-18.) Petitioner submits that the state has not proven the existence of a valid procedural bar for a number of his claims, and that Petitioner has established cause and prejudice to excuse any remaining procedural default. (#37, Reply at 1.) Petitioner asserts he satisfies the *Schlup v. Delo*, 513 U.S. 298 (1995) gateway for excusing procedural default and further, that he is actually innocent under *Herrera v. Collins*, 506 U.S. 390 (1993). (*Id.* at 7, 13.)

## **DISCUSSION**

I.   Exhaustion and Procedural Default

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004), *cert. denied*, 125 S.Ct. 2975 (2005). To be fairly presented, the proper factual and legal basis for the claim must be presented to the state court. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). In Oregon, the Oregon Supreme Court is the highest state court with jurisdiction

to hear post-conviction claims in satisfaction of the exhaustion requirement. *See* Or. Rev. Stat. 138.650 (2005).

If a petitioner has not "fairly presented" his federal claims in state courts, and can no longer do so under state law, then the petitioner's state-court remedies are technically exhausted. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991); *Johnson v. Zenon,* 88 F.3d 828, 829 (9th Cir. 1996). When state-court remedies are "technically exhausted" they are also "procedurally defaulted" because the state court has not had an opportunity to hear the claims before the federal court considers them. *O'Sullivan,* 526 U.S. at 842. The issue is then whether the petitioner can overcome the procedural default.

A petitioner may overcome the procedural default of his claims and obtain federal habeas review in one of two ways. He can show both cause for the default and actual prejudice, or he can demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. In the Ninth Circuit, the absence of available State remedies is irrelevant to and provides no excuse for the procedural default of state remedies. *See Smith v. Baldwin*, 510 F.3d 1127, 1138-39 (9th Cir. 2007), *cert. denied*, 129 S. Ct. 37 (2008).

<u>Cause and Actual Prejudice</u>

"Cause" for procedural default exists only if petitioner shows "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule."

11 - FINDINGS AND RECOMMENDATION

*Murray v. Carrier,* 477 U.S. 784, 488 (1986).  "Actual prejudice" must be actual and substantial disadvantage.  *United States v. Frady*, 456, U.S. 152, 170 (1982).  Although Petitioner uses the heading "Cause and Prejudice," Petition's argument to excuse his default is based on actual innocence.

<u>Fundamental Miscarriage of Justice: Actual Innocence</u>

To show a fundamental miscarriage of justice resulting from a procedural default, a petitioner must establish that he is "actually innocent." *Schlup v. Delo,* 513 U.S. 298, 329 (1995); *Calderon v. Thomspon*, 523 U.S. 538, 559 (1998); *Wildman v. Johnson*, 261 F.3d 832, 842,43 (9th Cir. 2001).  A claim of actual innocence must be supported with "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324.  The required evidence must create a "colorable claim" of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error.  *See id.* at 321-22.  It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329; *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001) ("the test is whether, with the new evidence, it is more likely than not that no reasonable juror

would have found [petitioner] guilty"), *cert. denied*, 535 U.S. 950 (2002).  The habeas court's determination regarding a petitioner's innocence is made "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 328 (quoting 38 U.Chi.L.Rev. at 160).

   A.  Procedurally Defaulted Claims

   Upon review of the record, this Court finds that, with the exception of Ground One (D)(1) and Ground Four, Petitioner's claims are procedurally defaulted for the reasons outlined by Respondent, and review on the merits is precluded absent Petitioner overcoming the defaults.

   Petitioner seeks to excuse the procedural default of Ground Two (B) and Ground Three by asserting there is no state court remedy for these claims, and accordingly the "lack of exhaustion is no bar to considering the merits." (#23, Petr.'s Brief at 20; #37, Reply at 3.)  Petitioner also contends it would be futile to present these claims to the state courts.  However, as outlined in the court's discussion of exhaustion and procedural default, the absence of a state remedy does not excuse procedural default in the Ninth Circuit.  *See Smith*, 510 F.3d at 1138-39.  Nor does futility excuse procedural default. *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Engle v. Isaac*, 456 U.S. 107, 130 (1982) ("futility cannot constitute cause if it means simply that a claim

13 - FINDINGS AND RECOMMENDATION

was 'unacceptable to that particular court at that particular time.'")); *Engle*, 456 U.S. at 130 n. 35, ("Even a state court that previously rejected a constitutional argument may decide later to accept the argument.")

Petitioner also seeks to overcome any default of his claims globally, through a showing of actual innocence under *Schlup*. Petitioner contends he presents significant evidence to establish that no reasonable juror would have convicted him had they heard all available evidence.  (#37, Reply at 6.)  I disagree.

The new evidence Petitioner presents in arguing he passes the *Schlup* gateway includes: a false report of a stolen vehicle by Mr. Cox, owner of the truck seen at the Lazy J motel before the fire on July 20th, 1998, and that Petitioner was alleged to have borrowed on several occasions in the summer of 1998, (Petr.'s Ex. 1); transcripts of co-defendant Harlukowicz's telephone calls, (Petr.'s Ex 2); and polygraph examinations of co-defendant Harlukowicz suggesting Mr. Harlukowicz was not being truthful, (Petr.'s Exs. 3 and 4).  This evidence does not constitute "new reliable evidence" of *Petitioner's* actual innocence of the crimes for which he was convicted.

Mr. Cox's false report reveals his involvement with drugs and that he lent his truck in exchange for drugs, but it does not in any way provide evidence Petitioner is innocent of involvement in the Lazy J motel fires.  The transcripts of Mr. Harlukowicz's telephone conversations reveal couched conversations, alluding to

unspecified acts by the parties, that are open to various
interpretations, but provide no exculpatory evidence relating to
Petitioner's participation in the Lazy J fires.  The polygraph
examinations suggest Mr. Harlukowicz was untruthful when answering
questions about his own involvement with the Lazy J motel fires,
but they do not constitute credible evidence of *Petitioner's*
innocence of the crimes for which he was convicted.

Petitioner also argues that the statements of co-defendant
Dean Perri, and of P.W. Caraway and Deann Neitch, (Respt.'s Exs.
110, 111, 112), help establish that he is actually innocent.  I
disagree.

The statements by Dean Perri and Deann Neitch contain
conflicting information with respect to Petitioner's whereabouts on
the night of July 19-20, 1998.  The reliability of each statement
is thus called into question by the content of the other.  Mr.
Caraway's statement specifies that a Marvin Donley, who had lived
at the Lazy J during the summer of 1998, claimed he and Mr.
Harlukowicz were paid by the owner of the Lazy J motel to burn it
down.  While the statement would have some impeachment value, given
the totality of the evidence presented at trial, including Mr.
Donley's trial testimony denying the conversation with Mr. Caraway,
I conclude that its impeachment value is not so great as to
undermine confidence in the outcome of the trial.  In any event,
Mr. Caraway's statement does not rule out Petitioner's
participation in the fires at the Lazy J.

15 - FINDINGS AND RECOMMENDATION

This Court has reviewed the entire record and, in light of all the evidence, is not convinced that "no juror, acting reasonably, would have voted to convict" Petitioner upon hearing the new evidence Petitioner presents. Accordingly, Petitioner, has failed to pass the *Schlup* gateway for the miscarriage of justice exception to procedural default, and review of his defaulted claims is precluded.

I note additionally that Grounds for Relief One (H), Two (C), and Three (B) fail on the merits. These claims are premised on the unconstitutionality of Oregon's consecutive sentencing statute under *Apprendi*. While this case was under advisement, the Supreme Court upheld the constitutionality of Oregon's consecutive sentencing statute, which delegates fact-finding for consecutive sentencing to judges, in an *Apprendi*-based challenge. *Oregon v. Ice*, 129 S.Ct. 711 (2009). Accordingly, there is no basis for relief on Grounds One (H), Two (C), and Three (B).

II. <u>The Merits</u>

A. <u>Standards and Scope of Review</u>

An application for writ of habeas corpus shall not be granted unless the adjudication in State court was:

> (1) contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254 (d).  In *Williams v. Taylor*, 529 U.S. 362, 386-89 (2000), the Supreme Court construed this provision as requiring federal habeas courts to be highly deferential to the state court decisions under review.

"'Clearly established Federal law' is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lambert v. Blodgett*, 393 F.3d 943, 974 (9th Cir. 2004) *cert. denied*, 126 S. Ct. 484 (2005). A state court decision is "contrary to" clearly established Federal law if it is "in conflict with", "opposite to" or "diametrically different from" Supreme Court precedent. *Williams,* 529 U.S. at 388.

An "unreasonable application" of clearly established federal law occurs when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lambert*, 393 F.3d at 974 (citing *Williams*).  "The state court's application of . . . law must be *objectively unreasonable*." *Williams*, 529 U.S. at 411 (emphasis added).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied clearly established federal law erroneously or incorrectly." *Id*.

The last reasoned decision by the state court is the basis for review by the federal court. *See Ylst v. Nunnemaker*, 501 U.S. 797,

803-04 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir. 2002).  In this case it is the PCR trial court's decision. (Respt.'s Corrected Ex. 121.)

Petitioner seeks to expand the record with Exhibits 1-6. Respondent objects to Petitioner's Exhibits 1-4, but has no objection to Exhibits 5 and 6 and they will, therefore, be included in the record.  As to Exhibits 1-4, Rule 7 of the Rules Governing § 2254 Cases provides that if the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination.  However, because Petitioner asks this Court to evaluate his claim of constitutional error in light of evidence which he did not present to the state court decision maker, he must meet the evidentiary hearing requirements of 28 U.S.C. § 2254(e)(2).  *Holland v. Jackson*, 542 U.S. 649, 653 (2004)(§ 2254(e)(2) requirements apply when a prisoner seeks relief based on new evidence, even where he does not request an evidentiary hearing).

Petitioner is not entitled to an evidentiary hearing in federal court to further develop the merits of his claim unless he diligently attempted to develop the evidence in state court, but was unable to do so.  *Williams v. Taylor*, 529 U.S. 420, 433-38 (2000).  If Petitioner failed to diligently develop the evidence, an evidentiary hearing is permitted only if his claim relies on: 1) a new rule of constitutional law, made retroactive to cases on

18 - FINDINGS AND RECOMMENDATION

collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(I) and (ii). In addition, the facts underlying the claim must be sufficient to establish by clear and convincing evidence, that no reasonable fact finder would have found the Petitioner guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). I find Petitioner has not satisfied these requirements and, accordingly, Exhibits 1-4 will not be included in this Court's review of Ground 1(D).

   C.   Ground 1(D)

   Petitioner raises a claim of ineffective assistance of trial counsel based on counsel's failure to call P.W. Caraway to testify on his behalf. Petitioner argues that if trial counsel had called Mr. Caraway "it is more than reasonably probable that at least one additional juror would have voted 'not guilty'" since two jurors had already made that decision.[4] (#37, Reply at 12.) For habeas relief to be granted, Petitioner must show this Court that the state PCR court adjudication of his claim was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984). I find he has not done so.

_____

   [4] The Court notes the jury poll Petitioner submits as Exhibit 5 reveals the jury voted 10:2 to convict on Counts 2, and 9-19, but 11:1 to convict on Counts 1, and 3-8.

Under *Strickland*, a petitioner must prove, 1) that counsel's performance fell below an objective standard of reasonableness and, 2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002); *Williams*, 529 U.S. at 390-91; *Strickland*, 466 U.S. at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. "Not every error that conceivably could have influenced the outcome undermines the reliability of the results of the proceeding." *Id*. at 693. Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. The reasonableness of counsel's conduct must be evaluated in light of the facts of the case and the circumstances at the time of representation. *Id*. at 690.

At the close of the PCR trial the PCR court issued its findings on the record. (Respt.'s Corrected Exh. 121 at 21-26.) The court found trial counsel's "primary thrust insofar as defending this case was the identification of [Petitioner] insofar as the two fires were concerned." (*Id*. at 21.) The PCR court noted counsel "attacked the first fire as being a reckless fire according to the fire marshall. . . ." (*Id*.) "[T]hen [counsel] attacked the second fire" in that no one identified Petitioner at the scene. (*Id*.) The court noted trial counsel did not find Mr. Caraway's assertions relating to a conversation with Mr. Donley to

be credible and found them to be impeachable.  (*Id*. at 22.)   The
PCR court found counsel's assessment of Mr. Caraway's assertions to
be an appropriate factor in deciding how to defend the case, and
concluded counsel's failure to call Mr. Caraway did not constitute
inadequate representation.  (*Id*.)   The PCR court summarized by
stating, "I can find no place in this record in which the adequacy
of trial counsel . . . was in question . . . and I certainly find
nothing in the record [with respect to Mr. Caraway] or anybody
else, that would have been significant insofar as being presented
through the course of the trial having some possibility of altering
the outcome of the trial."  (*Id*. at 25.)

The factual findings of the PCR trial court are presumed to be
correct absent Petitioner presenting clear and convincing evidence
to the contrary.  28 U.S.C. § 2254(e)(1).  Petitioner has not
presented such evidence, and upon reviewing the record I do not
find the PCR court's determination of Petitioner's ineffective
assistance of counsel claim to be contrary to or an unreasonable
application of *Strickland*.

The PCR court reviewed the record for evidence that trial
counsel's representation was deficient and concluded there was
none.  The PCR court found trial counsel exercised his professional
judgment in deciding Mr. Caraway's testimony would not benefit the
defense, and the PCR court found that calling Mr. Caraway to
testify would not have had an impact on the outcome of the trial.
Petitioner thus failed to meet his burden of showing counsel's

representation was deficient and that he was prejudiced as a
result.   Accordingly, the PCR court's adjudication denying relief
was  neither  contrary  to,  nor  an  unreasonable  application  of
established federal law, and habeas relief is precluded.

     D.   <u>Ground Four</u>

     In addition to Petitioner's assertion of innocence to overcome
procedural default under *Schlup,* discussed above, in Ground Four
Petitioner is understood to make a freestanding claim of innocence
under *Herrera v. Collins*, 506 U.S. 390 (1993).  (#37, Reply at 13.)
In *Herrera,* the Supreme Court assumed without deciding that in a
capital case federal habeas relief would be warranted on a showing
of actual innocence, if no state remedy existed.  *Id*. at 417.  But
the Court stated, "the threshold showing for such an assumed right
would  necessarily  be  extraordinarily  high."  *Id*.; *Carriger  v.*
Stewart, 132 F.3d 463, 477 (9th Cir.1997)(interpreting *Herrera*,
affirmative proof of innocence is required).  The Supreme Court has
not, however, recognized freestanding "actual innocence" claims by
habeas petitioners.  *See House v. Bell*, 547 U.S. 518, 554 (2006);
*Carriger*, 132 F.3d 463, 476 (9th Cir.1997)(discussing *Herrera*).

     Even  assuming  Petitioner  presents  a  cognizable  claim,  his
argument  that  the  state's  case  was  weak  and  that  there  was
insufficient evidence to convict him is not affirmative proof of
his  innocence.   Furthermore,  for  the  reasons  outlined  in  this
Court's discussion of the actual innocence gateway under *Schlup*,

the evidence Petitioner submits in support of his claim does not provide affirmative proof of his innocence. Accordingly, Petitioner is not entitled to habeas relief.

**CONCLUSION**

For the reasons stated above, the Amended Petition for Writ of Habeas Corpus (#22) should be denied and this action dismissed.

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due August 20, 2009. If no objections are filed, the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due September 3, 2009. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this ___5th___ day of August, 2009.


/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

23 - FINDINGS AND RECOMMENDATION